UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SUSAN MOORE

                      Plaintiff,                        Civil Case No. 07-CV-00770

vs.

FIRSTSOURCE ADVANTAGE, LLC

                      Defendant.

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

DATED:     Buffalo, New York
                August 7, 2009

Jason A. Botticelli, Esq.                                COLUCCI & GALLAHER, P.C.
James J. Greco, Esq.                                    *Attorneys for Defendant*
*Of Counsel*                                                    2000 Liberty Building
                                                                         424 Main Street
                                                                         Buffalo, New York 14202
                                                                         (716) 853-4080

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT.......................................................................................................................2

      I.      Plaintiff has Failed to Raise a Question of Fact
            Regarding a Violation of the TCPA..............................................................2

      II.     Plaintiff has Failed to Raise a Question of Fact
            Regarding a Violation of the FDCPA............................................................5

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**DECLARATORY RULING**                                                                                            **PAGE**

FCC Declaratory Ruling, FCC 07-232 (Dec. 28, 2007) ................................................... 2, 3, 4

**CASES**

*Austin v. Great Lakes Collection Bureau, Inc.*, 834 F.Supp. 557 (1993) ................................ 7

*Brzezinski v. Vital Recovery Services, Inc.*, 2006 WL 1982501 (E.D.Wis. 2006) ..................... 8

*Gilroy v. Ameriquest Mortg. Co.*, 2009 WL 1704255 (D.N.H. 2009) ....................................... 6

*Harvey v. United Adjusters*, 509 F.Supp. 1218 (D.Or. 1981) .................................................. 7

*Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117 (D.Nev. 2008) ......................... 6

*Leckler v. CashCall*, 554 F.Supp.2d 1025 (N.D.Cal. 2008) ..................................................... 2

*Leckler v. CashCall*, 2008 WL 5000528 (N.D.Cal 2008) ......................................................... 3

*U.S. West Communications, Inc. v. Hamilton*, 224 F.3d 1049 (9th Cir. 2000) ........................ 3

**STATUTES**

15 U.S.C. §1692c(c) ............................................................................................................. 4, 5, 8

15 U.S.C. §1692c(a)(1) ............................................................................................................... 7

15 U.S.C. §1692(d) ..................................................................................................................... 6

28 U.S.C. §2342 .......................................................................................................................... 3

**HOUSE REPORTS**

102-317, First Sess., 102nd Cong. (1991) ................................................................................. 4

## **PRELIMINARY STATEMENT**

Defendant, Firstsource Advantage, LLC ("Firstsource"), submits this Reply Memorandum of Law in further support of its motion for summary judgment dismissing plaintiff's Complaint in its entirety. As explained more fully below, plaintiff offers very little substantive argument in opposition to defendant's motion for summary judgment. Instead, plaintiff primarily procedurally attacks defendant's motion for summary judgment by moving to strike documents and affidavits damaging to her case. Defendant opposed plaintiff's motion to strike and now replies to plaintiff's opposition for defendant's motion for summary judgment.

Despite plaintiff's opposition, the facts remain that Firstsource used a cellular telephone number that was owned and registered to Mia Moore and given by Mia Moore when she signed up for cable at a residence where her mother/plaintiff, Susan Moore, resided. Plaintiff only offers speculation to counter defendant's motion. A close examination of the record exhibits that no real evidence has been provided to defeat defendant's motion for summary judgment.

## ARGUMENT

### POINT I

### Plaintiff has Failed to Raise a Question of Fact Regarding a Violation of the TCPA

Despite plaintiff's speculative argument to the contrary, the fact remains that Mia Moore owned the cellular telephone and number in question. Neither Time Warner, nor Adelphia Cable before it, ever performed their own investigation or research in an attempt to locate a customer's contact information. Indeed, both Time Warner and Adelphia would rely upon contact information provided to them by the consumer. Subsequently, Firstsource strictly used the contact information provided by Time Warner in their collection efforts in the instant action.

Edmund Rogers, the Director of Business Operations for Time Warner, provided an Affidavit setting forth that the contact information, including the subject cellular telephone number, would have been provided by Mia Moore. Contrary to plaintiff's assertions, it does not matter when the phone number was provided to Time Warner as contact information. To follow plaintiff's argument to its conclusion would mean that a business was strictly bound to only use initial contact information given by the consumer, even though the consumer at some point provided updated contact information on their account. This argument is irrational as clearly a party may consent to being contacted at a number that they are providing, whether it is initially or subsequently to opening up an account. This would hold even more true in a case where, as here, there was an ongoing transaction for goods and services, i.e. cable, and not just a one-time purchase.

Plaintiff attempts to use the analysis regarding "express consent" from the case of *Leckler v. CashCall*, 554 F.Supp.2d 1025 (N.D.Cal. 2008) even after acknowledging the court vacated its

decision on the grounds that it did not have authority to review the FCC's Declaratory Ruling. The *Leckler* court decision vacating its prior ruling states:

> "The FCC ruled that such autodialed and pre-recorded message calls to wireless numbers do not violate the TCPA when the called party provides the number to a creditor **in connection with an existing debt**. See FCC Declaratory Ruling, FCC07-232 (Dec. 28, 2007)" (emphasis added).

*Leckler v. CashCall,* 2008 WL 5000528 [N.D.Cal. 2008]) at p. 2.

Therefore, according to the FCC's Declaratory Ruling, it does not matter when, as argued by plaintiff, the number was given, just that it was given in connection with the account.

Plaintiff suggests this Court use the same analysis regarding "express consent" as set forth in the vacated *Leckler* decision. However, as set forth by the *Leckler* court when it vacated its prior decision, the Hobbs Act, 28 U.S.C. §2342, places exclusive jurisdiction with the Federal Court of Appeals to "enjoin, set aside, suspend (in whole or in part) or to determine the validity of . . . all final orders of the Federal Communications Commission . . . ." *Leckler*, 2008 WL 5000528 (N.D.Cal 2008) at p. 3; *citing U.S. West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000). The *Leckler* court went on to state, "the FCC's Declaratory Ruling is a 'final order' for the purpose of 28 U.S.C. §2342 because it was the agency's final decision interpreting the 'prior express consent' provision of the TCPA . . . ." *Leckler*, 2008 WL 5000528 (N.D.Cal 2008) at p. 4.

As pointed out by the *Leckler* court, if plaintiff wishes to challenge the FCC's ruling on prior express consent, her only remedy is to file a petition for review of the FCC's final order in a Court of Appeals naming the United States as a party. *Leckler*, 2008 WL 5000528 (N.D.Cal 2008) at p. 4.

3

The FCC's Declaratory Ruling regarding prior consent being given when the number is provider to a creditor in connection with an existing debt is in accordance with the legislative history of the TCPA. Within the House Report, it is stated:

> The Committee did not attempt to define precisely the form in which express permission or invitation must be given, but did not see a compelling need for such consent to be in written form.

House Report, 102-317, First Sess., 102nd Cong. (1991) at p. 13.

Plaintiff relies upon language in the 1992 TCPA Order in trying to infer that a verbal request to cease collection calls is appropriate and that any calls after the verbal request are in violation of the TCPA. However, this is plaintiff's own interpretation of the 1992 TCPA Order and legislative history of the TCPA. Plaintiff has failed to provide any case law or statutory backing that holds a verbal request to stop all calls must be honored. Indeed, the FCC made its December 28, 2007 Declaratory Ruling for the purpose of clarifying the issue of consent. Nowhere within the 2007 Declaratory Ruling is it mentioned that a verbal request to stop calls must be honored after prior express consent is given.

Additionally, FDCPA 15 U.S.C. §1692c(c) requires that a debtor submit a request in <u>writing</u> that debt collectors stop contacting them. To accept plaintiff's notion that the debtor could verbally request such calls to stop would contravene the clear requirements of the FDCPA.

Plaintiff has in no way contradicted the fact that the only way Time Warner or Adelphia would have received the subject cellular telephone number was through Mia Moore. They raise speculative arguments as to the timing when the number may have been given or, as set forth in plaintiff's partial motion for summary judgment, even suggest that Mia Moore may have committed fraud in opening the subject cable account. However, plaintiff was clearly the recipient of the cable as she resided at the subject address, despite her testifying that she was

4

unfamiliar with that address. Further, Mia Moore clearly could not commit fraud by providing a cellular telephone number that was owned by her and registered to her.

Plaintiff only admitted the phone was owned by her daughter after she was supplied with the subpoenaed phone records that prove the ownership. Now she claims there was a family plan and she had exclusive use of the phone. Plaintiff offers no proof of a family plan, i.e. service contract. She only offers her own self serving affidavit that she exclusively used the phone despite the phone records showing otherwise.

As mentioned above, plaintiff does not offer any evidence that Mia Moore never provided the subject number that was owned by her in connection with the subject cable account. It is interesting to note that absent from all the motion papers before the Court is testimony or an affidavit by Mia Moore supporting plaintiff's position. Plaintiff did not even disclose Mia Moore as a potential witness to this case.

In summary, plaintiff has failed to offer any evidence that the subject phone number, owned and registered to Mia Moore, was not given by Mia Moore to Adelphia or Time Warner in relation to the cable debt for the cable services provided to plaintiff. Defendant, in its collection activity, called the subject number that was owned by the individual, Mia Moore, who gave it. Defendant never received a written request that the calls stop. Based upon the foregoing, plaintiff has failed to offer anything but speculation that defendant violated the TCPA. As such, plaintiff's allegation of a TCPA violation should be dismissed in its entirety.

## POINT II

### Plaintiff has Failed to Raise a Question of Fact
### Regarding a Violation of the FDCPA

Pursuant to FDCPA Section 1692c(c) "Ceasing Communication," a debt collector must cease further communication with a consumer if a consumer notifies a debt collector in writing

5

that the consumer refuses to pay the debt or that the consumer wishes the debt collector to cease further communication with the consumer. Plaintiff's analysis that continued calls without a cease and desist letter constitute harassment or abuse under Section 1692(d) of the FDCPA is unreasonable since the statute sets forth the writing requirement.

The cases cited by plaintiff that continued calls after a verbal request that calls stop is a violation of 1692(d) are distinguishable from the instant case. In *Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117 (D.Nev. 2008), there was a written cease and desist letter provided by the debtor. In *Gilroy v. Ameriquest Mortg. Co.*, 2009 WL 1704255 (D.N.H. 2009), approximately 468 collection calls were made, some as late as 9:00 p.m. and after plaintiff informed the callers that it was an inconvenient time. Additionally, on at least two occasions, the callers in *Gilroy* accused plaintiff of being a liar.

In the instant action, the facts are only that calls continued to be made following plaintiff's June 29, 2007 phone conference with a Firstsource operator where she allegedly verbally requested the calls to stop. This call by plaintiff was made nine months after the calls began on the account and, during that conversation, plaintiff stated she would be sending a cease and desist letter. However, no letter was ever sent.

Plaintiff's allegation that defendant called plaintiff between 72 and 216 times following the verbal request to cease the calls is inaccurate. Pursuant to the Firstsource Account Notes and testimony of Firstsource representative, Jessica Wilton, there were four calls made from Firstsource's vendor, SoundBite, and 46 calls total made from a Firstsource autodialer. While each SoundBite call may represent up to three calls, this would equal 58 calls total on this account during the 14 months the account was active. This is hardly the number of excessive calls contemplated in the cases cited by plaintiff.

A plaintiff carries the burden of proving that a defendant debt collector placed abusive phone calls. *Harvey v. United Adjusters*, 509 F.Supp. 1218, 1221 (D.Or. 1981). In the instant action, other than solely alleging that there was abuse simply because calls were made, plaintiff alleges that on September 20, 2007, a representative of Firstsource sang "Mia, Mia Mia" during a phone call plaintiff initiated. However, the Account Notes clearly show that no conversation with plaintiff took place on or about September 20, 2007. Indeed, the only conversation that occurred with a live individual on the account was on June 29, 2007, where plaintiff stated she would send a cease and desist letter. A copy of the Firstsource Account Notes is attached to the Affidavit of Melissa Kotas as Exhibit "A".

Based upon the foregoing, there is documented evidence that the alleged "abuse" did not take place, and plaintiff cannot meet her burden to establish this allegation. *Harvey, supra*. Furthermore, even if plaintiff's allegation is true that an operator sang "Mia, Mia, Mia," this is not the type of harassing or abusive language contemplated in the FDCPA. There is no allegation of swearing, threats, calls at unreasonable times or calls to plaintiff's work. Though researched, case law could not be found by deponent relating singing to a violation of the FDCPA.

Plaintiff also alleges there is an issue of fact regarding a violation of 15 U.S.C. §1692c(a)(1). This allegation is based on the claim that plaintiff was inconvenienced by receiving debt calls for Mia Moore on a phone that plaintiff was using, but was owned and registered to Mia Moore. Basically, plaintiff alleges to have had the use of her daughter's cell phone and found debt collection calls placed to her daughter harassing.

The cases cited by plaintiff in support of this argument are also distinguishable from the instant action. In *Austin v. Great Lakes Collection Bureau, Inc.*, 834 F.Supp. 557 (1993),

7

plaintiff received collection calls at her place of employment and a call was placed to plaintiff's secretary at her place of employment following plaintiff's request that she not be contacted at work. In the instant action, no calls were placed to plaintiff's place of employment.

The other case cited by plaintiff, *Brzezinski v. Vital Recovery Services, Inc.*, 2006 WL 1982501 (E.D.Wis. 2006), concerns a letter sent by a debt collector which allegedly violated the FDCPA. In analyzing that case, the court stated the following:

> Debt collectors must honor requests to cease communications at places of employment and at **inconvenient times and places**, even if the requests are made orally and are not written. This is because the statute places on the debt collector the burden of not communicating with the consumer once the debt collector knows or has reason to know that a **particular time and place** are inconvenient for the consumer or that the consumer's employer prohibits the consumer from receiving such communication (emphasis added).

*Brzezinski, supra* at p. 4.

Nowhere within the case is it stated that all communications must cease, just that when it is known that a **particular time and place**, such as a place of employment, are inconvenient for the consumer. The rationale by the court in *Brzezinski* is sound since it limits the calls to particular times and places of inconvenience. The court did not go as far to state that further calls at other times are a violation of the FDCPA. If this was the case, the written requirement of Section 1692c(c) would not be necessary.

It is not alleged in this action that plaintiff received calls at a particular time and place following her instruction not to do so. It is merely alleged that plaintiff verbally requested that all calls cease, for which she should have sent a letter pursuant to the written requirement of Section 1692c(c).

Based upon the foregoing, plaintiff has failed to raise an issue of fact of a violation of the FDCPA, and defendant's motion for summary judgment on that issue should be granted.

## **CONCLUSION**

Plaintiff has failed to offer any proof other than speculation to defeat defendant's motion for summary judgment.  The facts remain that defendant used a cellular telephone number in its collection activity that was provided to the cable company for cable services where plaintiff resided.  The phone number was given by the owner of the phone, Mia Moore, and correspondence requesting that calls cease was never sent.  While plaintiff may have raised minor factual disputes, she has not raised a genuine issue of material fact to overcome summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

Based upon the foregoing, Firstsource Advantage, LLC respectfully requests an Order granting summary judgment dismissing plaintiff's Complaint in its entirety, and granting such other and further relief as this Court deems just and proper.

DATED:   Buffalo, New York
         August 7, 2009

                                    COLUCCI & GALLAHER, P.C.


                              By:    /s/ Jason A. Botticelli
                                    Jason A. Botticelli, Esq.
                                    James J. Greco, Esq.
                                    *Attorneys for Defendant*
                                    2000 Liberty Building, 424 Main Street
                                    Buffalo, New York 14202
                                    (716) 853-4080
                                    jbotticelli@colucci-gallaher.com