UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SUSAN MOORE,

                Plaintiff,

    v.                                      **DECISION AND ORDER**
                                              07-CV-770

FIRSTSOURCE ADVANTAGE, LLC,

                Defendant.

## I.  INTRODUCTION

Plaintiff Susan Moore filed this suit against Defendant Firstsource Advantage, LLC, for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (Amended Complaint (Docket No. 16) ¶ 1.)  Plaintiff alleges that Defendant, in attempting to collect a debt allegedly owed by Plaintiff's daughter, used prohibited telephonic communication methods, refused to abide by her request that Defendant stop calling her, and used tactics intended to annoy and harass her.  (See Am. Compl. ¶¶ 16-27.)  Plaintiff seeks actual, statutory, and treble damages, along with attorneys' fees and costs.  (Am. Compl. at p. 5.)

Pending before this Court are the following: (1) Plaintiff's First Motion to Strike certain evidence from the record (Docket No. 31);[1] (2) Plaintiff's Second Motion to Strike

---

[1] Plaintiff has filed a joint memorandum of law and accompanying exhibits both in support of her First Motion to Strike and in opposition to Defendant's Motion for Summary Judgment.  (Docket No. 32 and attachments thereto.)  Defendant has filed an affidavit in opposition to the First Motion to Strike, along with a memorandum of law (Docket No. 42, Ex. 14), and other supporting exhibits (Docket No. 42 and attachments thereto).

certain evidence from the record (Docket No. 33);[2] (3) Plaintiff's Motion for Partial Summary Judgment (Docket No. 28);[3] and (4) Defendant's Motion for Summary Judgment.[4] (Docket No. 40.)

For the reasons stated below, this Court finds that Plaintiff's First Motion to Strike should be granted in part and denied in part, and that Plaintiff's Second Motion to Strike also should be granted in part and denied in part. This Court finds that Plaintiff's Motion for Partial Summary Judgment should be denied, and that Defendant's Motion for Summary Judgment also should be denied.

---

Defendant moved to strike and re-file several submissions it made to this Court on the ground that the submissions inadvertently contained private information. (Docket No. 38.) This Court granted Defendant's motions. (Docket No. 39.) Accordingly, redacted versions of the following documents have been re-filed with new docket numbers: (1) Defendant's Motion for Summary Judgment (Docket No. 27, re-filed at Docket No. 40); (2) Defendant's Response to Plaintiff's motion for partial summary judgment (Docket No. 30, re-filed at Docket No. 41); (3) Defendant's Affidavit in Opposition to Plaintiff's first motion to strike (Docket No. 35, re-filed at Docket No., 42); and (4) Defendant's Affidavit in Opposition to Plaintiff's second motion to strike (Docket No. 36, re-filed at Docket No. 43).

[2]In support of this motion, Plaintiff has submitted a memorandum of law and several exhibits. (Docket No. 33 and attachments thereto.) Defendant has submitted an affidavit and several exhibits in opposition to Plaintiff's motion. (Docket No. 43 and attachments thereto.)

[3]In support of her motion, Plaintiff has submitted a statement of facts pursuant to Local Rule 56.1 (Docket No. 28, Ex. 2); an affidavit (Docket No. 28, Ex. 9); a memorandum of law (Docket No. 28, Ex. 10); and several other supporting exhibits. (Docket No. 28 and attachments thereto.) Plaintiff also has filed a reply memorandum (Docket No. 34) and a second affidavit (Docket No. 44) in support of this motion. Defendant has filed a Response in Opposition to Plaintiff's Motion, with a memorandum of law (Docket No. 41, Ex. 18) and other supporting exhibits (Docket No. 41 and attachments thereto). Defendant also has filed a response to Plaintiff's second affidavit (Docket No. 45).

[4]In support of its motion, Defendant has filed a statement of facts pursuant to Local Rule 56.1 (Docket No. 40, Ex. 2); a memorandum of law (Docket No. 40, Ex. 19); and several other supporting exhibits (Docket No. 40 and attachments thereto). Defendant also has filed a reply memorandum in support of its motion. (Docket No. 37.) Plaintiff has filed a memorandum in opposition to Defendant's motion, along with supporting exhibits. (Docket No. 32 and attachments thereto.)

## II. BACKGROUND

### A.  Factual Background

The following facts are not in dispute.  In 2007, Plaintiff Susan Moore used a cellular telephone with the number (716) 578-6206.  (Plaintiff's Statement of Facts in support of Motion for Partial Summary Judgment (Docket No. 28, Ex. 2 ("Pl.'s Statement I"))  ¶ 8; Defendant's Statement of Facts in Opposition to Motion for Partial Summary Judgment (Docket No. 41 ("Def.'s Statement I")) ¶ 10.)  That phone number was given to Plaintiff to use by Plaintiff's daughter, Mia Moore, who had purchased a family cellular telephone package.  (Pl.'s Statement I ¶¶ 1, 8; Def.'s Statement I ¶¶ 11-12.)

Defendant, an Indian-owned company, is in the business of debt collection.  (Pl.'s Statement I ¶ 5; see Def.'s Statement I ¶ 8.)  Defendant uses telephone calls as a means of collecting debts for Time Warner Cable[5] and other clients.  (Pl.'s Statement I ¶5.)

On September 6, 2006, Time Warner Cable turned over an account to Defendant for collection.  (Pl.'s Statement I ¶ 6; Def.'s Statement I ¶ 8.)  Time Warner turned the account over to Defendant because the account was in default and Time Warner's internal collection efforts had been unsuccessful.  (Defendant's Statement of Facts in support of its Motion for Summary Judgment (Docket No. 40, Ex. 2 ("Def.'s Statement II")) ¶¶ 5, 6, 9; Plaintiff's Response to Defendant's Statement of Facts in support of its Motion for Summary Judgment (Docket No. 32, Ex. 8 ("Pl.'s Statement II")) ¶¶ 5, 6, 9.)

The name on the account given to Defendant was Mia Moore, and the address listed on the account was 123 Holling Drive, Buffalo, New York.  (Pl.'s Statement I ¶ 3;

---

[5]Time Warner Cable is the successor-in-interest to Adelphia Cable as of August 1, 2006.  (Def.'s Statement I ¶ 1.)

Def.'s Statement II ¶ 5; Pl.'s Statement II ¶ 5.)  According to Defendant's call logs, the phone number on the account was (716) 578-6206.  (Pl.'s Statement I ¶ 7; Def.'s Statement I ¶ 18.)

Beginning on September 6, 2006, Defendant began making calls to (716) 578-6206 to collect on Time Warner's account.  (Def.'s Statement I ¶ 22; Pl.'s Statement I ¶¶ 6-7.) The calls continued into 2007.  (Def.'s Statement II ¶¶ 22-23.)  The calls were documented in Defendant's logs.  (Pl.'s Statement I ¶ 10.)  In calling the number, Defendant used two different automated systems called SoundBite and Blaster, which were capable of leaving prerecorded messages for the subject of the call.  (Def.'s Statement II ¶¶ 20-21; Pl.'s Statement I ¶¶ 11-12.)  Defendant also used live operators to make calls.  (Def.'s Statement II ¶ 20.)

On June 29, 2007, Defendant received a call from a female caller, which Plaintiff alleges was herself.  (Pl.'s Statement I ¶ 19; Def.'s Statement II ¶¶ 23-25.)  During the call, the caller asked that the calls stop and stated she would be sending a cease and desist letter to Defendant.  (Def.'s Statement II ¶ 24; Pl.'s Statement II ¶ 24.)  The caller did not identify herself, and when identification was requested, she hung up.  (Def.'s Statement II ¶ 25; Pl.'s Statement II ¶ 25.)  Defendant did not receive a written request to stop the calls. (Def.'s Statement II ¶ 26; Pl.'s Statement II ¶ 26.)  Defendant continued to call (716) 578-6206 in its effort to collect on the account.  (Pl.'s Statement I ¶ 20.)

**B.  Procedural Background**

Plaintiff filed this suit against Defendant on November 15, 2007.  (Complaint (Docket No. 1).)  Plaintiff alleges Defendant violated numerous provisions of the FDCPA and the TCPA.  (Amended Complaint (Docket No. 16) ¶¶ 28-41.)  Specifically, Plaintiff claims

4

Defendant violated the FDCPA by attempting to collect from Plaintiff a debt she did not owe; by continuing to call her after she requested the calls stop; by calling her on her cellular phone; and by calling her with the intent of annoying or harassing her.  (Am. Compl. ¶ 29.)  Additionally, Plaintiff alleges that Defendant violated the TCPA by using an automated dialing system and/or an artificial or prerecorded voice to call her cellular phone, without her prior express consent.  (Am. Compl. ¶ 33.)  Plaintiff alleges Defendant's conduct was done intentionally and without justification, and that she has suffered emotional distress as a result.  (See Am. Compl. ¶¶ 35-38.)  Plaintiff seeks statutory and actual damages as provided under the FDCPA and TCPA.  (Am. Compl. at p. 5.)

The parties appeared before the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, to schedule discovery and trial.  (Docket No. 8.)  The original case management order provided that all fact depositions were to be completed by September 19, 2008, and that all discovery was to be completed by December 31, 2008.  (Docket No. 9.)  However, in February 2009, after the end of the discovery period, Plaintiff moved to extend the discovery deadline for another ninety days and to take a second deposition of Defendant's representative.  (Docket No. 18.)  Judge McCarthy denied this motion on the ground that Plaintiff had not shown good cause.  (Decision and Order (Docket No. 21) at 4.)

Subsequently, both parties failed to file pre-trial statements by the March 26, 2009, deadline.  (Docket No. 22.)  The parties were called before this Court on April 15, 2009, to show cause for their failure to comply with the schedule.  (Docket No. 23.)  The parties explained that they had been attempting to mediate this dispute.  (Docket No. 24.)  At that time, this Court agreed to extend the time to complete discovery, with the admonition that

no further extension requests would be considered.  (Docket No. 24.)  The amended case management order provided a June 15, 2009 deadline for dispositive motions.  (Docket No. 26.)

On June 15, 2009, Plaintiff moved for partial summary judgment on her claims under the TCPA only.  (Pl.'s Mot. Partial Summ. J. (Docket No. 28) at 1.)  Defendant cross-moved for summary judgment on all of Plaintiff's claims.  (Def.'s Mot. Summ. J. (Docket No. 40) at 1.)  Plaintiff then filed two motions to strike certain evidence.  (Docket Nos. 31, 33.)

## III.  DISCUSSION

### A.  Motions to Strike Evidence

In her first motion to strike, Plaintiff seeks an order striking the following categories of evidence: (1) portions of the affidavit of Edmund Rogers, along with the exhibits attached to Mr. Rogers' affidavit; (2) portions of the affidavit of Melissa Kotas, along with one exhibit attached to Ms. Kotas' affidavit; (3) portions of the attorney affidavit of Jason Botticelli (counsel for Defendant); (4) records from the Buffalo Municipal Housing Authority; and (5) certain Verizon telephone records.  (First Mot. Strike (Docket No. 31) at 1.)  In her second motion, Plaintiff reasserts her motion to strike the above evidence and also seeks to strike the affidavit of Timothy Segall.  (Second Mot. Strike (Docket No. 33) at 1.)  Defendant opposes the motions to strike.  This Court will consider the two motions together.

### 1.  Edmund Rogers Affidavit and Exhibits

Plaintiff contends that this Court should strike paragraphs 4 and 6 through 15 of the affidavit of Edmund Rogers, a Time Warner employee.  (Docket No. 40, Ex. 12.)  Plaintiff

also moves to strike three Time Warner billing screens under the name Mia Moore that are attached as exhibits to Mr. Rogers' affidavit (Docket No. 40, Exs. 13-15 ("Mia Moore billing screens")).   Plaintiff argues that Defendant failed to disclose Mr. Rogers' identity, or produce the Mia Moore billing screens, as required under the Federal Rules of Civil Procedure.

> Under Rule 26(a)(1), a party is required to provide to the opposing party
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment; [and]
>
> (ii) a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(1).  Additionally, under Rule 26(e),

> A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:
>
> . . .
>
> in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

Fed. R. Civ. P. 26(e)(1)(A).  These rules make clear that a party is under an automatic and continuing duty to disclose witness identities, and to turn over or identify documents, that are supportive of the party's case or requested during the discovery process.

Defendant did not identify Mr. Rogers as a potential witness in its initial disclosure under Federal Rule of Civil Procedure 26(a)(1). (Docket No. 33, Ex. 2.) However, in its response to Plaintiff's interrogatories, Defendant stated that it "may call Mr. Ed Rodgers [sic] from Time Warner Cable to testify as to the manner and method of transferring the account data to Firstsource and the nature of the relationship between the two parties." (Docket No. 33, Ex. 4, at p. 7.) Defendant notified Plaintiff of Mr. Rogers' existence and potential testimony during the discovery period, and therefore complied with disclosure requirements. The motion to strike Mr. Rogers' affidavit will not be granted on the ground that Defendant failed to disclose Mr. Rogers' identity.

With respect to the Mia Moore billing screens, in its response to Plaintiff's interrogatories, Defendant generally stated that it might use documents containing "[a]ccount and address information for plaintiff's daughter, Mia Moore." (Docket No. 33, Ex. 4.) However, in its response to Plaintiff's request for production, which called for "[a]ny and all documents identified in Response to Plaintiff's Interrogatories" and "[a]ny and all documents in Defendant's possession or control, which Defendant claims, are relevant in any way to the subject matter of the instant lawsuit," (Docket No. 33, Ex. 3), Defendant did not turn over the Mia Moore billing screens.[6] Plaintiff asserts, and Defendant does not dispute, that Defendant did not precisely identify or produce actual copies of the Mia Moore billing screens prior to attaching them to the present motion for summary judgment.

Defendant does not offer any explanation for its failure to produce the Mia Moore billing screens. Instead, it contends that Plaintiff had "ample opportunity" to subpoena

---

[6]Defendant did not object to these requests for production. (Docket No. 33, Ex. 3.)

records from Time Warner to obtain this information.  Under the rules, however, Defendant was required to identify and/or provide for inspection or copying those documents in its "possession, custody, or control" that were either responsive to Plaintiff's request for production or that Defendant might use to support its case.   Fed. R. Civ. P. 26 & 34.  It is undisputed that Time Warner and Defendant were parties to a written contract.  (Docket No. 32, Ex. 5.)  The contract included a mutual indemnification clause providing that each party would be required to cooperate with the defense of the other in the event of a third party suit.  (Id. ¶ 10.)  By virtue of this contractual relationship, Defendant is deemed to have "control" over documents in Time Warner's possession that are relevant to this case.

 See Sedona Corp. v. Open Solutions, Inc., 249 F.R.D. 19, 22 (D.Conn. 2008) (a party "controls," and therefore has an ongoing duty to produce, those documents it has the right (under a contractual relationship), authority, or practical ability to demand from a third party); In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 180 (S.D.N.Y, 2006) (the term "control" is broadly construed in defining the scope of the disclosure requirement); Scott v. Arex, 124 F.R.D. 39, 41 (D.Conn. 1989) (same).   Thus, Defendant had a duty to produce the Mia Moore billing screens either as part of its initial disclosures or in response to Plaintiff's request for production.

Under Rule 37,

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  A court should consider the following factors in determining whether exclusion of the non-disclosed evidence is proper:  (1) the party's explanation for

the failure; (2) the importance of the evidence; (3) the prejudice to the opposing party; and (4) the possibility of a continuance.  Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) (citing Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)).  A court need not find a party acted in bad faith in failing to comply with disclosure requirements.  Id.

Applying the Design Strategy factors, this Court finds exclusion is proper.  It is true that the Mia Moore billing screens are important to the defense, because they purportedly show the information given by Mia Moore to Time Warner (including the phone number that was called by Defendant for collection) at the time the Holling Drive account was opened. But Defendant has not explained its failure to turn over the Mia Moore billing screens, despite having possession and/or control of them.  Additionally, allowing the use of these documents would be prejudicial to Plaintiff because discovery is permanently closed in this case.  Finally, given the procedural posture of this case discussed above, the possibility of a continuance at this time is minimal.  For these reasons, this Court will grant Plaintiff's motion to strike the Mia Moore billing screens attached to Mr. Rogers' affidavit.

Plaintiff argues that this Court should exclude Mr. Rogers' affidavit to the extent it is based solely on his review of the Mia Moore billing screens.  This Court agrees for the reasons discussed above.  Accordingly, this Court will grant Plaintiff's motion to strike with respect to paragraphs 4, 6, 7, 11, 12, 13, 14, and 15 of the affidavit.

### 2. Melissa Kotas Affidavit and Exhibit

Plaintiff next seeks to strike paragraphs 13 through 16 of the affidavit of Melissa Kotas, an employee of Defendant, on the ground that the testimony is irrelevant because it concerns Defendant's attempts to collect on one of the Time Warner accounts later opened by Mia Moore.  (Docket No. 30, Ex. 14.)  This account was not in Plaintiff's name,

and the collection calls were not made to Plaintiff's number.  Plaintiff also seeks to strike the call log associated with this collection effort, which is attached to Ms. Kotas' affidavit. (Docket No. 30, Ex. 18.)

As Defendant points out, evidence of multiple delinquent cable accounts in Plaintiff's daughter's name, but under different addresses and phone numbers, might be probative of Mia Moore's and Plaintiff's credibility.  Thus, Plaintiff's motion to strike the testimony of Melissa Kotas and the attached call log will be denied.

### 3.  Jason Botticelli Affidavit

Next, Plaintiff moves to strike paragraphs 3 through 11 and 16 of the attorney affidavit of Jason Botticelli, Defendant's counsel, in support of Defendant's motion for summary judgment.[7]  (Docket No. 40, Ex. 11.)  Plaintiff asserts that Mr. Botticelli does not have firsthand knowledge of the matters discussed, and therefore is not competent to testify about them.  Plaintiff also objects to Mr. Botticelli's discussion of Plaintiff's deposition testimony in his affidavit.  Defendant does not respond to Plaintiff's contentions.

In general, an affidavit in support of, or in opposition to, a motion for summary judgment must be based on the personal knowledge of the affiant.  Fed. R. Civ. P. 56(c)(4); Chandler v. Coughlin, 763 F.2d 110, 113-14 (2d Cir. 1985).  In paragraphs 3 and 4 of the affidavit, Mr. Botticelli discusses matters on the record in this case, of which he would have personal knowledge.  These paragraphs will not be stricken.

In paragraphs 5 through 11, Mr. Botticelli testifies about multiple factual matters underlying this litigation.  There is nothing in the record indicating that Mr. Botticelli has

---

[7]In her first motion to strike, Plaintiff moved to strike paragraphs 5 through 15 of Mr. Botticelli's affidavit.  (Docket No. 31.)  In her second motion to strike, Plaintiff apparently amended her motion to seek exclusion of paragraphs 3 through 11 and 16.  (Docket No. 33.)

firsthand knowledge to support these statements.  In paragraph 16, Mr. Botticelli makes the legal argument that Defendant is not liable to Plaintiff under either the FDCPA or TCPA.  This is not a statement of fact, and therefore is not appropriately contained in an affidavit.  See Fed. R. Civ. P. 56(c)(4).

Accordingly, Plaintiff's motion to strike will be granted with respect to paragraphs 5 through 11 and 16 of Mr. Botticelli's affidavit.

### 4.  Buffalo Municipal Housing Authority Records

Plaintiff seeks to strike records from the Buffalo Municipal Housing Authority ("BMHA"), on the ground that Defendant failed to produce the documents during discovery, and because the documents have not been properly authenticated.  These records purport to show that Plaintiff was living at the 123 Holling Drive address during the time the Time Warner cable account for that address was open.  (See Docket No. 42, Ex. 13.)

The parties do not dispute that Defendant did not identify or produce the BMHA records as part of its Rule 26(a) disclosures or in response to Plaintiff's request for production.  Defendant contends, however, that the records were not in its possession at the time of these disclosures, because it did not seek the records until after Plaintiff testified in her deposition that she was unfamiliar with the 123 Holling Drive address.  Defendant then subpoenaed the records to determine who was residing at that address during the relevant period.  Defendant provided a copy of the subpoena to Plaintiff at the time it was served.  (Docket No. 42, Ex. 7.)  By letter dated June 6, 2009, the BMHA sent Defendant the records in question.  (Docket No. 42, Ex. 13.)

Unlike the Mia Moore billing screens from Time Warner, the records from the BMHA were not in Defendant's "possession, custody, or control" until it received them from BMHA.

As such, Defendant had no duty to produce the BMHA records until it gained actual possession of them in early June 2009, at which point Defendant was required to produce the records as responsive to Plaintiff's earlier request for production.  Defendant does not dispute that it did not turn over the actual records to Plaintiff prior to attaching them to its motion for summary judgment, which was filed June 15, 2009.

Applying the Design Strategy test, this Court finds that exclusion of the BMHA records is unwarranted as a sanction for Defendant's failure to produce.  The BMHA records provide important evidence reflecting on Plaintiff's and Mia Moore's credibility in this action.  Although Defendant does not explain its failure to timely turn over the BMHA records to Plaintiff, this failure was non-prejudicial.  Plaintiff was put on immediate notice of the subpoena and the exact information it sought from BMHA (*i.e.*, "a certified copy of any information you [BMHA] may have that will verify/confirm that Susan Moore and/or Mia Moore resided at 123 Holling Drive, Buffalo, New York 14216 and the dates in which they resided at said address").  (Docket No. 42, Ex. 7.)  The delay in producing the documents was not significant: Defendant received them on or about June 6, 2009, and provided them within nine days, on June 15, 2009 (the date it filed its motion for summary judgment).  Finally, although discovery is closed, further discovery related to the BMHA records would not likely produce any additional relevant information.  See Design Strategy, 469 F.3d at 296.

Plaintiff also contends that the BMHA records should be stricken because they were not authenticated.  In response, Defendant has filed the affidavit of Russell J. Sciandra, Assistant General Counsel for BMHA, certifying that the BMHA records are authentic.  (Sciandra Aff. (Docket No. 42, Ex. 12) ¶ 9.)  This cures any prior deficiency.

13

Accordingly, Plaintiff's motion to strike the BMHA records will be denied.

**5. Verizon Records**

Plaintiff next seeks to strike telephone records from Verizon belonging to the phone number called by Defendant (See Docket No. 40, Ex. 7.)  Defendant subpoenaed the Verizon records on May 5, 2009, and Verizon responded to the subpoena on May 29, 2009.  (Docket No. 42, Exs. 2 & 4.)  Plaintiff was provided with a copy of the subpoena by letter dated May 5, 2009.  (Docket No. 42, Ex. 3.)

As with the BMHA records, Defendant did not have a duty to produce the Verizon records until after it received them from Verizon in late May 2009.  Defendant provided the records to Plaintiff on June 16, 2009, one day after filing its motion for summary judgment.[8]  (Docket No. 42, Ex. 5.)

Any failure by Defendant to timely produce the Verizon records was not prejudicial and does not warrant exclusion of the records.  First, the records are undoubtedly important evidence of the call history for the phone number in question.  They also purport to show that the account associated with that phone number was in Mia Moore's name, not Plaintiff's.  Second, although Defendant does not explain its delay in turning over the records to Plaintiff, at the time it noticed the subpoena, Defendant advised Plaintiff that it was seeking "a certified copy of the call history from January 1, 2007 through December 31, 2007 for the following phone number: (716) 578-6206."  (Docket No. 42, Ex. 2.)  Thus, Plaintiff was on notice of the likely content of the documents requested.  Finally, as with the BMHA records, although discovery is closed, any further discovery with respect to the

---

[8]Defendant explains that it provided Plaintiff with the Verizon records at Plaintiff's counsel's request.

Verizon records would not likely be productive.  The motion to strike the Verizon records will be denied.[9]  Design Strategy, 469 F.3d at 296.

### 6. Timothy Segall Affidavit

Finally, Plaintiff moves to strike the affidavit of Timothy Segall on the ground that Defendant did not identify Mr. Segall as a witness in this case.  (Docket No. 41, Ex. 8.) Mr. Segall's affidavit was not filed until September 4, 2009.  (Id.)

Defendant admits it did not disclose Mr. Segall's identity during the discovery period, but explains that the case of Satterfield v. Simon & Schuster, 569 F.3d 946 (9th Cir. 2009), which was handed down June 19, 2009 (after the parties' motions for summary judgment were filed), raised a new question of law about the telephone equipment used by Defendant in this case.   Satterfield held that a relevant question in determining whether a call to a cellular phone is prohibited under the TCPA is whether the equipment used by the caller "has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'"  569 F.3d at 951 (quoting 47 U.S.C. § 227(a)(1) (emphasis in original)).  After Satterfield was decided, Defendant claims it recognized it was necessary to clarify that the SoundBite system used by Defendant did not have this capacity.  As such, Defendant procured the affidavit of Mr. Segall, a representative from SoundBite, to provide testimony to this effect.

Defendant's reasoning is unpersuasive.  The question of whether Defendant's equipment had the capacity to randomly or sequentially store and call numbers was relevant before the Satterfield decision was handed down.  Indeed, the TCPA itself makes

---

[9]Plaintiff also seeks to strike the Verizon records for lack of authentication.  Defendant has cured any deficiency by filing the declaration of Verizon's Custodian of Records certifying that the records are authentic.  (Docket No. 42, Ex. 4.)

clear that the issue is the equipment's capacity to store and generate such types of calls. 47 U.S.C. §227(a)(1) (defining an "automatic telephone dialing system" as equipment "that has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers[.]"). <u>Satterfield</u> merely reinforced the plain meaning of the TCPA on this question.  569 F.3d at 951 ("[W]e conclude that the statutory text is clear and unambiguous.").

Because Defendant failed to disclose Mr. Segall's identity until after discovery had closed and dispositive motions were filed, because Defendant has offered no legitimate justification for this failure, and because allowing Mr. Segall's testimony at this late date would prejudice Plaintiff, Plaintiff's motion to strike Mr. Segall's affidavit will be granted. <u>See</u> <u>Haas v. Delaware & Hudson Ry. Co.</u>, 282 Fed.Appx 84, 86-87 (2d Cir. 2008) (applying <u>Design Strategy</u> factors to uphold the exclusion of an affidavit filed after the close of discovery where (1) the proffering party had no justification for its delay; (2) the testimony was directly relevant to a key question in the case; and (3) consideration of the testimony would prejudice the opposing party, which had not had the opportunity to examine the witness).

**B.  Summary Judgment Motions**

The parties have filed cross-motions for summary judgment.  Plaintiff seeks summary judgment on her claim under the TCPA only.  Defendant seeks summary judgment on all of Plaintiff's claims.

**1.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the movant shows that there is no genuine dispute as to any material fact and that

the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.  56(a).  A "genuine

dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the

non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under

governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn

from the evidence must be "viewed in the light most favorable to the party opposing the

motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 126 L.Ed.2d

142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is

summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The

function of the court is not "to weigh the evidence and determine the truth of the matter but

to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### 2.  TCPA Claim

Both parties have moved for summary judgment on Plaintiff's claim under the

Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  The TCPA provides in

relevant part:

> It shall be unlawful for any person within the United States
> . . .
>
> (A) to make any call (other than a call made for emergency
> purposes or made with the prior express consent of the called
> party) using any automatic telephone dialing system or an
> artificial or prerecorded voice –
>
> . . .
>
> (iii) to any telephone number assigned to a . . . cellular
> telephone service . . . or any service for which the called party
> is charged for the call[.]

17

47 U.S.C. §§ 227(b)(1)(A)(iii).

The TCPA charges the Federal Communications Commission ("FCC") with prescribing regulations to implement the provisions of the TCPA.  Id. § 227(b)(2).  In a declaratory ruling, the FCC addressed the question of the application of the TCPA to debt collection calls.  FCC 07-232 Declaratory Ruling (Dec. 28, 2007) (attached at Docket No. 41, Ex. 20).  In the ruling, the FCC held that

> autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the "prior express consent" of the called party.

Id. at 1.

The FCC went on:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible.  We conclude that the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt.

Id. at 6.  The FCC emphasized that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."  Id. at 6-7.  The burden is on the creditor to establish that it obtained the necessary "prior express consent" from the debtor.[10]  Id. at 7.

---

[10]The FCC's declaratory ruling is a "final order" entitled to precedential effect in this Court. See Leckler v. Cashcall, Inc., 2008 WL 5000528, **2-3 (N.D.Cal. Nov. 21, 2008) (under 28 U.S.C. § 2342, the federal courts of appeal have exclusive jurisdiction over appeals of final orders by the FCC, including Declaratory Ruling 07-232).

### a.   Use of an automated telephone dialing system or artificial/prerecorded messages

Defendant contends it did not violate the TCPA because it did not employ an "automated telephone dialing system" ("ATDS") in calling Plaintiff's cell phone number. Defendant claims the automated systems it used did not fall within the TCPA's definition of an ATDS.  However, the proof on the record before this Court does not establish this fact.  Further, even if it never used an ATDS, Defendant also could be liable under the TCPA for placing calls to Plaintiff's cell number using an artificial or prerecorded voice.  47 U.S.C. § 227(b)(1)(A)(iii).  Plaintiff alleges that prerecorded message calls were made by Defendant to her cell phone.  (See Moore Aff. ¶ 11 (Docket No. 32, Ex. 7).)  As such, genuine issues of material fact remain on whether Defendant used an ATDS or an artificial or prerecorded voice in calling Plaintiff.

### b.  "Prior express consent" by Plaintiff

Any calls made to Plaintiff's cell phone number using an ADTS or an artificial or prerecorded voice would run afoul of the TCPA unless Defendant had "prior express consent" to call the number in question.  47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff argues Defendant never had "prior express consent" to make automated or prerecorded calls to her cell phone for collection purposes.  Plaintiff contends that, under the FCC's ruling, a contact number must have been given at the time of the application for services to constitute "prior express consent" to call that number.  Here, there is no proof that the phone number in question was provided at the time the Holling Drive account was activated, as opposed to some later time.

Nowhere in the FCC's ruling did it state that a phone number must be given at the

time the account is opened to constitute "prior express consent."  Instead, the FCC stated:

> [P]rior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided *during the transaction that resulted in the debt owed*.

FCC 07-232, at 6-7 (emphasis added).  Although the FCC did not define the exact parameters of the phrase "during the transaction that resulted in the debt owed," a commonsense reading of that phrase does not lead to the conclusion that a phone number must be given at the precise time the account is activated.  Moreover, given that the FCC emphasized that the relevant issue in evaluating "prior express consent"  is whether a phone number has voluntarily been provided to the creditor, it would strain logic to conclude that a debtor's voluntary provision of a contact number at the time an account is opened would constitute "prior express consent" to be called at that number, but that the equally voluntary provision of a contact number sometime after the account is opened would not.  See id. at 6 ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.") (quoting the FCC's 1992 TCPA Order, 7 FCC Rcd. at 8769, para. 31).

Keeping in mind that certain evidence has been stricken from the record, as discussed above, the record reveals that (1) it was Time Warner's (and its predecessor Adelphia's) general practice to obtain a contact phone number from a client when that client opened a cable account (Rogers Aff. ¶ 8); (2) neither Time Warner nor Adelphia would perform an independent investigation in an attempt to locate contact information for a subscriber (Rogers Aff. ¶ 10); and (3) the number provided by Time Warner to Defendant

upon transferring the Holling Drive account for collection purposes was (716) 578-6206 (Pl.'s Statement I ¶ 7).   Thus, at some point between the account's activation and its referral to Defendant, Time Warner obtained the (716) 578-6206 number in connection with the account.

However, there is a gap in the proof regarding how Time Warner obtained this phone number.   In particular, Plaintiff has questioned the credibility of Mr. Rogers' description of Time Warner's general practices with respect to obtaining client contact information.   Additionally, the evidence does not establish that the phone number in this case was voluntarily provided to Time Warner either by Mia Moore, Plaintiff, or someone else.   In light of the fact that Defendant bears the burden of proof on the question of "prior express consent," FCC Ruling 07-232 at 7, this Court finds that a genuine issue of material fact remains regarding whether Defendant ever had "prior express consent" to call the number in question.   See Moltz v. Firstsource Advantage, Inc., Case No. 08-CV-239S, 2011 WL 3360010, *5 (W.D.N.Y. Aug. 3, 2011) (denying summary judgment in similar case where plaintiff could not specifically recall giving Time Warner his cell phone number); Sengenberger v. Credit Control Svcs., Inc., 2010 WL 1791270, *4 (N.D. Ill. May 5, 2010) (finding a factual dispute on issue of "prior express consent" where proof did not establish whether the plaintiff directly provided his cell phone number to the creditor, a laboratory service, in connection with the services provided).

### c. Revocation of consent by Plaintiff

Plaintiff also contends that, even if Defendant did have "prior express consent" to call the phone number in question, Plaintiff revoked that consent during her June 29, 2007 call to Defendant, during which she requested that the calls to her cell phone stop.   Plaintiff

asks for summary judgment on her TCPA claims for all autodialed or prerecorded calls to her cell phone after that date.

In two related cases in this District, it has been held that a verbal request to cease debt collection calls to a cellular phone will not be sufficient to revoke "prior express consent" under the TCPA. Moltz, 2011 WL 3360010, at *5 (because Congress has stated that debt collection efforts are governed by the FDCPA, when calls to a cell phone are made for debt collection purposes, the FDCPA's requirement that a request to stop the calls be made in writing applies); Starkey v. Firstsource Advantage, LLC, Case No. 07-CV-662A, 2010 WL 2541756, *6 (W.D.N.Y. Mar. 11, 2010) (same). See also Cunningham v. Credit Mgmt., L.P., 2010 WL 3791104, *5 (N.D. Tex. Aug. 30, 2010) (following Starkey); but see Gutierrez v. Barclays Group, 2011 WL 579238, *4 (S.D. Cal. Feb. 9, 2011) (holding that verbal revocation of consent to debt collection calls to a wireless number is sufficient under the TCPA).

Here, it is undisputed that Plaintiff never sent a written cease-and-desist request to Defendant.  (Def.'s Statement II ¶ 26; Pl.'s Statement II ¶ 26.)  As such, if "prior express consent" was given to Defendant, it was not legally revoked by Plaintiff.[11]

In sum, genuine issues of material fact exist with respect to whether Defendant used

---

[11]A related question, not raised by the parties, is whether Defendant's possible discovery that it was not calling the correct number in connection with the Holling Drive account obligated it (under the TCPA) to stop calling the number or to verify the accuracy of its records.  Cf. Meadows v. Franklin Collection Svc., Inc., 414 Fed.Appx. 230, 234-35 (11th Cir. 2011) (holding that (1) the TCPA exempts debt collection calls erroneously made to non-debtors on *residential* lines; and (2) after being told they have a "wrong number," debt collectors have the right, under the *FDCPA*, to engage in "reasonable follow-up activities" to determine whether the contact information they have is in fact erroneous); see also Santino v. NCO Fin. Sys., Inc., Case No. 09-CV-982-JTC, 2011 WL 754874, *6 (W.D.N.Y. Feb. 24, 2011) (dismissing TCPA claim based on calls to non-debtors on a residential line). This Court need not reach this question at this time, because the evidence is still in dispute regarding whether Defendant was ever put on notice that it was not in fact calling Mia Moore.

prohibited methods in calling Plaintiff's wireless number, and with respect to whether Defendant had "prior express consent" to call that number using those methods.  The parties' motions for summary judgment on the TCPA claim will be denied.[12]

### 3.  FDCPA Claims

Plaintiff alleges that Defendant violated the FDCPA by attempting to collect a debt that Plaintiff did not owe, and by falsely representing to her that she owed it; calling Plaintiff after her specific request that Defendant cease communicating with her by phone; making telephone calls with the intent of annoying, abusing, harassing, and oppressing Plaintiff; and calling Plaintiff on her cell phone to collect the debt.  (Am. Compl. ¶ 29.)

Defendant seeks summary judgment on Plaintiff's claims under the FDCPA. Defendant argues that the proof establishes Plaintiff owed the debt in question and that its collection efforts were legitimate.  Defendant also argues that Plaintiff never made a legally sufficient request to Defendant to cease its collection efforts.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses."  Moltz, 2011 WL 3360010, at *2 (quoting 15 U.S.C. § 1692(e) and Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 363 (2d Cir. 2005)).  A single violation of the FDCPA is sufficient to establish civil liability.  Id. (citing Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)).

---

[12]Because summary judgment is not warranted on the question of whether Defendant violated the TCPA, summary judgment also is not proper on the question of whether any such violation was "willful," entitling Plaintiff to treble damages.  See 47 U.S.C. § 227(b)(3).

### a.  15 U.S.C. § 1692e

The FDCPA provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Specifically, a debt collector is prohibited from making any false representation about "the character, amount, or legal status of any debt."  Id. § 1692e(2)(A).  In determining whether a communication by a debt collector should be interpreted as false or misleading, a court should apply the objectively-based "least sophisticated consumer" test.  Bentley v. Great Lakes Collection Bur., 6 F.3d 60, 62 (2d Cir. 1993).

Plaintiff alleges that Defendant violated § 1692e by falsely representing to Plaintiff that she owed the debt on the Holling Drive account, when in fact Plaintiff did not owe the subject debt.  Defendant contends that summary judgment on this question is warranted because the undisputed facts show Defendant was calling the number provided by the debtor and was attempting to recover a legitimate debt.

Here, the undisputed facts are that the Holling Drive account was in default and that Time Warner gave Defendant Mia Moore's name, but a cell phone number used by Plaintiff, in connection with the Holling Drive account.  Additionally, it is undisputed that Mia Moore was the registered owner of the Verizon account under which Plaintiff's phone number was registered.  However, it is unclear from the record whether Defendant at any time discovered that the cell phone number it was calling in connection with the Holling Drive account was being used by Plaintiff, not Mia Moore.   For instance, Plaintiff alleges she told Defendant's representative that Mia Moore did not live with her and that Defendant had the "wrong number" during the June 29, 2007, call.  (Pl.'s Statement I ¶ 19; see also

24

Pl.'s Dep. (Docket No. 41, Ex. 4) at 31, lines 17-23.)   But Defendant counters that when its representative asked the caller to identify herself, she hung up. (Def.'s Statement II ¶ 25.)   As such, it is unclear whether Defendant was on notice that it was calling someone other than Mia Moore. Cf. Meadows v. Franklin Collection Svc., Inc., 414 Fed.Appx. 230, 234 (11th Cir. 2011) (a debt collector has the right to perform "reasonable follow-up activities" to ascertain whether a claimed "wrong number" actually is erroneous).

Moreover, the evidence in the record does not establish beyond dispute *what* Defendant said to Plaintiff about the debt in its live telephone calls or prerecorded messages.  As such, this Court cannot evaluate whether any such communications would be misleading to the "least sophisticated consumer."  Bentley, 6 F.3d at 62.  Given the uncertainties in the record, this Court finds there is a genuine issue of material fact regarding whether Defendant violated § 1962e by making false representations to Plaintiff about the debt in connection with its collection efforts.

### b. 15 U.S.C. §§ 1692c(a)(1) & 1692d

Under 15 U.S.C. § 1692c(a)(1), a debt collector generally may not communicate with a consumer in connection with the collection of a debt "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer."  15 U.S.C. § 1692c(a)(1).  Additionally, 15 U.S.C. § 1692d makes it a violation of the FDCPA for a debt collector to "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. §§ 1692d & 1692d(5).  In general, the question of whether a debt collector's

conduct in calling a debtor violates these provisions is a factual matter that turns on the evidence of the volume, frequency, pattern, and substance of the calls.  Kavalin v. Global Credit & Collection Corp., Case No. 10-CV-314-JTC, 2011 WL 1260210, *4 (W.D.N.Y. Mar. 31, 2011) (citing Jeter v. Credit Bur., Inc., 760 F.2d 1168, 1179 (11th Cir. 1985); Gilroy v. Ameriquest Mortg. Co., 632 F.Supp.2d 132, 136-37 (D.N.H. 2009).

Defendant contends that summary judgment in its favor is appropriate on the question of whether Defendant violated §§ 1692c(a)(1) and 1692d by continuing to call Plaintiff's phone after her verbal request on June 29, 2007, that the calls stop.  Defendant maintains that, because Plaintiff did not make her request in writing, as is required to cease communication from a collector under § 1692c(c), Defendant's subsequent calls to Plaintiff were not harassing or abusive as a matter of law.

Section 1692c(c) provides that if a consumer notifies a debt collector in writing that the consumer wishes the debt collector to cease further communications with the consumer, the debt collector shall not communicate further with respect to such debt.  See Moltz, 2011 WL 3360010, at *3.  However, contrary to Defendant's contention, even if a debtor never submits a written cease and desist demand, a collector's conduct following a verbal demand still can violate the FDCPA by constituting harassment or abuse.  Id. ("[T]he lack of a written request does not preclude a finding that the calls violated the FDCPA.") (citing Bingham v. Collection Bur. Inc., 505 F.Supp. 864, 873 (D.N.D. 1981)). See also Kerwin v. Remittance Assistance Corp., 559 F.Supp.2d 1117, 1124 (D. Nev. 2008) (a genuine issue of material fact existed with respect to claimed violation of § 1692d where debt collector continued to call plaintiff even after being verbally informed it had the wrong number) (citing Pittman v. J.J. MacIntyre Co. of Nevada, 969 F.Supp. 609, 613 (D.

26

Nev. 1997)).

The record in this case does not reveal the actual number of calls made to Plaintiff's phone either before or after the June 29, 2007 call.  (See Moore Aff. ¶ 11 (Plaintiff's estimate that she received 90 prerecorded calls from Defendant between June and September 2007); Def.'s Reply Mem. at 6 (Docket No. 37) (contending Defendant made a maximum of 58 calls to Plaintiff during the 14 months the account was active with Defendant).)  Nor does it clarify the frequency with which the calls were made or the pattern in which they were made.  (See Moore Aff. ¶ 11 (Plaintiff's testimony that she often received "multiple" calls per day).)  As such, factual issues remain regarding whether the volume, frequency, pattern, and substance of Defendant's calls ran afoul of §§ 1692c(a)(1) and 1692d.  See Kavalin, 2011 WL 1260210, at *4.

Moreover, Plaintiff has alleged that Defendant harassed her by mocking her and implying she was lying during its calls.  (See Pl.'s Dep. at 29, lines 22-23; 30, lines 1-12 (testimony that Defendant's representative started singing "Mama Mia" after asking to speak to Mia Moore, then hung up on Plaintiff).)  The use of abusive language by a debt collector, including calling a debtor a "liar," can constitute harassment in violation of the FDCPA.  See Chiverton v. Fed. Fin. Gp., 399 F.Supp.2d 96, 101 (D.Conn. 2005) (citing Federal Trade Commission, Staff Commentary on the FDCPA, 53 Fed.Reg. 50097, 50105 (1988)).

Because genuine issues of material fact exist with respect to whether Defendant violated §§ 1692c(a)(1) and/or 1692d, this Court will deny summary judgment on the claims

under those provisions.[13]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's First Motion to Strike (Docket No. 31) will be granted in part and denied in part.  In particular, the motion will be granted with respect to (1) paragraphs 4, 6, 7, 11, 12, 13, 14, and 15 of the affidavit of Edmund Rogers (Docket No. 40, Ex. 12), along with the Mia Moore billing screens attached to the affidavit (Docket No. 40, Exs. 13-15); and (2) paragraphs 5 through 11 and 16 of the affidavit of Jason Botticelli (Docket No. 40, Ex. 11).  Plaintiff's Second Motion to Strike (Docket No. 33) will be granted with respect to the affidavit of Timothy Segall (Docket No. 41, Ex. 17).  In all other respects, the motions to strike will be denied.  Plaintiff's Motion for Partial Summary Judgment (Docket No. 28) will be denied, and Defendant's Motion for Summary Judgment (Docket No. 40) will be denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's First Motion to Strike (Docket No. 31), is GRANTED in part and DENIED in part.

FURTHER, that Plaintiff's Second Motion to Strike (Docket No. 33) is GRANTED

---

[13]Although Defendant has moved for summary judgment on all of Plaintiff's FDCPA claims, Defendant does not make an argument as to why summary judgment is proper on Plaintiff's claims under 15 U.S.C. §§ 1692f(1) and (5), and it does not demonstrate the absence of evidence in the record supporting those claims.  Accordingly, this Court will deny summary judgment on those claims.  See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (noting that a party seeking summary judgment has the burden of establishing that no genuine issue of material fact exists, and the burden will be satisfied only if the movant can point to an absence of evidence to support an essential element of the claim in question) (citing cases).

in part and DENIED in part.

FURTHER, that the following evidence shall be stricken from the record in this case: (1) paragraphs 4, 6, 7, 11, 12, 13, 14, and 15 of the affidavit of Edmund Rogers (Docket No. 40, Ex. 12), along with the Mia Moore billing screens attached to the affidavit (Docket No. 40, Exs. 13-15); (2) paragraphs 5 through 11 and 16 of the affidavit of Jason Botticelli (Docket No. 40, Ex. 11); and (3) the affidavit of Timothy Segall (Docket No. 41, Ex. 17).

FURTHER, that Plaintiff's Motion for Partial Summary Judgment (Docket No. 28) is DENIED.

FURTHER, that Defendant's Motion for Summary Judgment (Docket No. 40) is DENIED.


SO ORDERED.

Dated:      September 15, 2011
            Buffalo, New York\

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court